UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA JAMES EVANS,

                    Plaintiff,

v.                                                          CASE NO. 8:07-CV-639-T-MAP

CITY OF PLANT CITY, FLORIDA, and
MATTHEW LAWSON, in his individual
Capacity as an officer with the Plant City
Police Department,

                    Defendants.
_____/

## ORDER

      This is an action for damages under 42 U.S.C. § 1983 against a Plant City detective and a

state claim against the City for false arrest.  Plaintiff, whose name is similar to that of a suspect in

a home invasion robbery, claims the detective made materially false or reckless statements in a

probable cause affidavit for Plaintiffs' arrest warrant.  In turn, the detective moves to dismiss the

complaint per Fed. R. Civ. P. 12(b)(6) asserting that no constitutional violation occurred and, to the

extent that one did, he is entitled to qualified immunity (doc. 14).  After consideration, the motion

is denied.[1]

      *A.  Rule 12(b)(6) standard of review*

      The Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts

upon which he bases his claim.  Instead, all that is required is that the claimant set forth a "short and

plain statement of his claim showing that the pleader is entitled to relief" in order to "give the

defendant fair notice of what the ... claim is and the grounds upon which it rests."  Fed.R.Civ.P.

8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Hence, "[w]hile a complaint attacked by a Rule

---

[1] The parties have consented to my jurisdiction per 28 U.S.C. § 636 (doc. 13).

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative label on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" *Id.* at 1965 (citations omitted). Moreover, the pleadings are construed broadly, and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Watts v. Florida Intern. University*, 495 F.3d 1289, 1295 (11th Cir. 2007).

B. *Facts*

On March 7, 2003, three white males in their twenties broke into Yong Sun Harvill's apartment while she was away. As they ransacked the place, Harvill's son, John Thompson, arrived. One of the men put a knife to Thompson's throat. Eventually, the trio tied up Thompson and left with some jewelry. Thompson told authorities he knew he could identify the one who held him at knife point if he saw him again.

Notably, a similar home invasion had occurred in the area just two days earlier, and Plant City detective Matthew Lawson ("Lawson") was assigned to investigate both crimes. He quickly interviewed several witnesses including a victim of the first robbery, Brandy Jay. By March 25, Lawson had developed five suspects for the two robberies: Alexis "Lex" Torres, David Newkoop (a/k/a "Pistol Pete" or "Pete"), Chad Posey, Landy Johnson, and an individual only identified as "Josh." All the witnesses, with the exception of the two victims (Thompson and Jay), offered somewhat conflicting hearsay accounts about who had committed the robberies. Some said they had heard the same crew did the crimes; others, however, heard differently. And some of these accounts

2

differed from the only eye witness interviewed about the first robbery, Brandy Jay, who told Lawson

that Alexis Torres, "Pete," Landy Johnson, and "Josh" had robbed her.[2]

Despite this evidentiary confusion, Lawson discovered that Chad Posey was an inmate at the

Polk County Jail.  On March 26,  Posey admitted to the detective that he invaded Jay's home with

Torres, Newkoop, Johnson, and Josh Evans, whom he described as a white male from Tampa.  But

Posey denied participating in Thompson's robbery.   Nonetheless, he explained to Lawson his

knowledge about the second crime: in a conversation with Newkoop, Newkoop admitted committing

the second home invasion with Torres, and Josh Evans.  Newkoop also told Posey that Torres had

held the knife at Thompson's throat, that all belonged to the same crew (the "butane clan"), and that

Torres led the group.  When Lawson showed Posey prepared photo arrays, Posey picked Torres,

Newkoop, and Johnson.  *See* doc. 20-3 at ¶¶ 18-21.

Given Posey's confirmation of Torres's, Newkoop's, and Johnson's identities, Lawson

immediately set out to find the remaining butane clan member by searching drivers' license

databases for Hillsborough and Polk County.  He picked the Plaintiff, Joshua James Evans, and that

same day showed Thompson a photo spread with Plaintiff's picture.   According to Lawson,

Thompson was "100%  positive" Plaintiff was the one who held a knife to his throat (doc. 20-3, ¶

25).  The next day, the detective obtained arrest warrants for Torres, Newkoop, Johnson, and the

Plaintiff.  In the supporting probable cause affidavit, Lawson alleged the Plaintiff had been identified

from a photopack as the person who held a knife to Thompson's throat.  Further, he alleged that

---

[2]  The complaint states Brandy Jay "identified" her robbers during the March 24
interview with Lawson.  *See* doc. 20-3 at ¶ 14.  Yet, how Jay knew the names of the robbers is
unclear, or how she identified them is unclear.  A fair reading of the complaint suggests that Jay
did not identify them from a photo array because Lawson did not develop photopacks until the
next day, and those centered on Torres, Newkoop, Johnson, and Posey.

Chad Posey, Ruth Guthiel, and Brandy Jay had also identified him.[3]

Contrary to the affidavit, neither Posey, Guthiel, or Jay had identified the Plaintiff as participating in any robbery. Indeed, Lawson had not even shown them a photo spread that included the Plaintiff. To the extent the affidavit implies Thompson "positively" identified the Plaintiff from a photo pack as the one who held a knife to his throat, Thompson later denied making such a statement. Instead, he says he told Lawson the Plaintiff "most resembled" the perpetrator out of those individuals included in the array. And, Thompson's description of his assailant given shortly after the event differed from Plaintiff's in important respects. Plaintiff was thinner (140 pounds versus 170-180 pounds), had dark brown hair as opposed to light-brown, and was dark-complected instead of a light-complected. Lastly, the affidavit contradicted Newkoop's admissions to Posey: namely, that Torres was the one who held Thompson at knife point.

Lawson arrested the Plaintiff on April 2, 2003. Unable to afford the $70,000.00 bond, Plaintiff spent nine days in jail before being released on his own recognizance. When Thompson finally saw the Plaintiff in person, Thompson immediately told the prosecutor the Plaintiff was not one of the robbers. On September 29, 2003, five months after his arrest, the State of Florida dismissed all criminal charges against him. Eventually, authorities identified the "Josh Evans" to be Joshua Ray Evans. Like the Plaintiff, this Evans lived in the Hillsborough and Polk County area, but unlike Plaintiff, who had no prior arrest record, this Evans had multiple arrests for crimes

---

[3] The complaint, which does not quote the probable cause affidavit at any length, summarizes Lawson's account. It is unclear from this summary if Lawson obtained arrest warrants for Torres, Newkoop, Johnson, and the Plaintiff for both home invasions or just Harvill's. Irrespective, the complaint reasonably implies the following about the affidavit as to the Plaintiff: that Posey, Guthiel, and Jay identified Plaintiff and that one of these individuals or all three picked the Plaintiff from a photo array. *See* doc. 20-3 at ¶ 31.

4

involving violence and drug trafficking.  When Thompson saw Joshua Ray Evans, Thompson confirmed he was the person who held a knife to his throat.

   *C. Discussion*

   The Supreme Court has repeatedly stressed qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *quoting Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)(emphasis in original).  The doctrine offers complete protection for government officials who are sued in their individual capacities where "their conduct violates no clearly established statutory or constitutional rights that a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Its purpose is to shield from suit "all but the plainly incompetent or one who is knowingly violating the federal law" thereby allowing government officials to carry out their discretionary duties without fear of personal liability or harassing litigation.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001).  To be eligible for qualified immunity, the official must establish that he was engaged in a discretionary function at the time of the alleged violation.  If the official satisfies that demand, the plaintiff must then show the defendant committed a constitutional violation and that the constitutional right the defendant violated was "clearly established" at the time.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Crosby,* 394 F.3d 1328, 1332 (11th Cir. 2004).  The first part of the test is easy here.  Making an application for an arrest warrant clearly falls within the official responsibilities of a police detective and, therefore, within the ambit of his discretionary functions.   *See Malley v. Briggs,* 475 U.S. 335, 342-43 (1986).  As to the second part of the test, the constitutional right at issue was clearly established when Lawson

5

applied for a warrant.  *See Franks v. Delaware,* 438 U.S. 154 (1978); *Whiting v. Traylor,* 85 F.3d

581, 585 n. 5 (11th Cir. 1996).

In *Franks,* the Supreme Court held an accused has the right under the Fourth Amendment

to challenge the truthfulness of a police officer's sworn statements in support of a search warrant.

But this right is limited and prescribed.[4]  Accordingly, the Court outlined a three-stage analysis for

evaluating *Franks* claims.  First, the accused must make a "substantial preliminary showing" the

affiant made a "false statement knowingly and intentionally, or with reckless disregard for the truth."

*Franks,* 438 U.S. at 155.  The Eleventh Circuit defines "reckless disregard for the truth" to include

instances where the affiant "should have recognized the error, or at least harbored serious doubts"

about his representations.  *United States v. Kirk,* 781 F.2d 1498, 1502-03 (11th Cir. 1986).

Moreover, the accused must be specific regarding his claim of falsity or reckless disregard.

Conclusory allegations are insufficient.  *Franks,* 438 U.S. at 171.  He should point to the exact

portions of the application he challenges, provide a statement of reasons for his contentions, and

supply an offer of proof supporting his grounds or give some satisfactory explanation for not doing

so.  *Id.*  Negligence or innocent mistakes do not violate the Fourth Amendment.  *Id.*; *Madiwale v.

Savaiko,* 117 F.3d 1321, 1326 (11th Cir. 1997).  If the Plaintiff satisfies these threshold demands,

*Franks* requires the Court to set aside the disputed material and examine the remaining affidavit.

---

[4]  *Franks* concerns only the affiant's own deliberate falsity or reckless disregard.  Hence, the source of the alleged false statement is significant.  The affiant, for example, is entitled to rely on the observations of other law enforcement officers in a common investigation.  In such instances the affiant's statements, even if incorrect, are still "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."  *Franks,* 438 U.S. at 165.  Nonetheless, the affiant in some way must set out in his application that he is basing his information on others.  This satisfies the Fourth Amendment's particularity requirement and allows the reviewing judge to make an independent probable cause determination.  *Id.* at 165; *United States v. Kirk,* 781 F.2d 1498, 1504-05 (11th Cir. 1986).

6

If the redacted application supports a probable cause finding, no Fourth Amendment violation has occurred. *Franks,* 438 U.S. at 171-172.[5]

When qualified immunity is at stake, like it is here, a court measures probable cause using a slightly different perspective from that governing a motion to suppress in a typical criminal case. *See Von Stein v. Brescher,* 904 F.2d 572, 578-79 (11th Cir. 1990) ("intertwined with question of probable cause is the issue of qualified immunity").[6]  For qualified immunity, the issue is not whether there was probable cause but whether there was *arguable* probable cause to arrest. *Crosby v. Monroe County,* 394 F.3d 1328, 1332-33 (11th Cir. 2004); *Madiwale*, 117 F.3d at1324.  Arguable probable cause means: "if, under all of the facts and circumstances, an officer reasonably could – *not necessarily would* – have believed that probable cause was present." *Crosby*, 394 F.3d at 1332-33.  Putting it differently, as long as there is arguable probable cause, qualified immunity applies *even if* actual probable cause did not exist.

A corollary to this is that an arresting officer is required to conduct a reasonable

---

[5] Although *Franks* dealt with false statements, the Eleventh Circuit also applies its reasoning to omissions. *Madiwale,* 117 F.3d at 1326-27.  Thus, an agent who intentionally or with reckless disregard omits facts material to an affidavit's probable cause violates the Fourth Amendment. *Madiwale,* 117 F.3d at 1326-27.  The Eleventh Circuit permits an accused to show recklessness without direct evidence.  A court, instead, can infer recklessness from the omission itself if the fact is "clearly critical to a finding of probable cause." *Id.* at 1327 (quoting *United States v. Martin,* 615 F.2d 318, 329 (5th Cir. 1980)).  In other words, the omitted fact is material if, when added to the application, probable cause no longer exists. *Madiwale,* 117 F.3d at 1327.

[6] Probable cause exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense has been committed or is being committed by the person to be arrested. *Beck v. Ohio,* 379 U.S. 89, 91 (1964); *Pickens v. Hollowell,* 59 F.3d 1203, 1205 (11th Cir. 1995).  Because probable cause "does not deal with hard certainties, but with probabilities," law enforcement officers are entitled to formulate certain "common-sense conclusions about human behavior." *Illinois v. Gates,* 462 U.S. 213, 231-32 (1983).

investigation to establish probable cause. *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998). For a qualified immunity analysis, the officer is charged with possessing all of the information reasonably discoverable by an officer acting reasonably under the circumstances. *Kingsland v. City of Miami,* 382 F.3d 1220, 1228 (11th Cir. 2004). Thus, he cannot conduct a biased investigation, or elect not to obtain easily discoverable facts, or ignore relevant information negating probable cause. *Id* at 1229.

At this procedural juncture, applying the above standards, the Plaintiff's complaint survives the qualified immunity hurdle. Lawson misled the reviewing judge by suggesting, if not directly stating, that Posey, Guthiel, Jay, and Thompson had identified the Plaintiff. These statements, examined in the light most favorable to the Plaintiff, go beyond negligent police work. They were reckless. Posey knew the Evans who belonged to the butane clan and could have easily corrected Lawson's incorrect assumption about Plaintiff. Indeed, a reasonably acting officer, particularly after quickly discovering his assumed target had no criminal history, would have checked with Posey before even approaching Thompson, who did not know his assailant beforehand. Nor did Lawson show the Plaintiff's photo spread to Jay. Inexplicably, he showed her photo spreads pertaining to Torres, Newkoop, Posey, and Johnson, but not the Plaintiff, even though Jay had named "Josh" as one of the perpetrators.[7] When Lawson's reckless statements are redacted from the affidavit, the affidavit lacks arguable probable cause to believe that it was the Plaintiff who participated in

_____

[7] Lawson showed Jay these photos arrays after he had secured the warrants. When Jay failed to point out Johnson, the detective concluded Posey had lied to him. Lawson immediately acted to have Johnson's arrest warrant withdrawn. *See* doc. 20-3, ¶¶ 34-37.

Thompson's home invasion.[8]

   *D.  Conclusion*

For the reasons stated above, it is hereby

ORDERED:

1.  Defendants' Motion to Dismiss (doc. 14) is DENIED.

DONE AND ORDERED at Tampa, Florida October 5, 2007.


_Mark A. Pizzo_

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


cc: Counsel of Record

---

   [8]  Lawson cites in support of his position *Rodriguez v. Farrell,* 280 F.3d 1341 (11th Cir. 2002).  In that case, police officers executed a valid arrest warrant but mistakenly arrested the wrong suspect.  The panel determined the officers were shielded by qualified immunity as their mistake was a reasonable one.  *Rodriguez* is inapplicable here for several reasons.  First, its holding applies principally to an officer who executes and knows nothing other than the information presented in the warrant and the arresting package.  Thus, as long as the suspect when compared to the identifying characteristics of the person named in the warrant does not fall outside the zone of "reasonable mistakes," the executing officers are entitled to qualified immunity.  Although Lawson may have participated in the execution of Plaintiff's warrant, he, unlike the officers in *Rodriguez*, had investigated the case and submitted the probable cause affidavit for the warrant.  *Rodriguez* does not conflict with *Franks* and carve out an exception for mistaken identity cases.  The statements made in support of the warrant must not be materially false or reckless.